J-A13009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMAR A. WASHINGTON | : | |
| | : | |
| Appellant | : | No. 658 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 1, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000548-2019

BEFORE:  BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 25, 2023**

Lamar A. Washington appeals *nunc pro tunc* from the aggregate judgment of sentence of twenty-one to forty-two years of incarceration followed by five years of probation, which was imposed after a jury convicted him of rape, involuntary deviate sexual intercourse, aggravated assault, burglary, and terroristic threats.  We affirm.

The trial court offered the following summary of the facts underlying the above-referenced criminal docket ("2014 case"):

> On June 15, 2014, Liana Whitmer (hereinafter "Ms. Whitmer") went to bed in her bedroom in her first-floor apartment . . . [in] Harrisburg, Pennsylvania, when she was awoken by what she thought was a bad dream, but was unfortunately reality – someone punching her in the face.  When she woke up, someone was on top of her.  In her own words: "I remember pain, lots of pain, and I asked him please don't kill me at one point.  And when he went to strangle me the last time, I knew I wasn't going to

---

[*] Former Justice specially assigned to the Superior Court.

wake up and I wasn't going to see my kid again. But then I woke up."

Ms. Whitmer . . . did not recognize the perpetrator and described him as a black male with a t-shirt pulled over his head. She was beaten countless times, ripped out of her bed and drug through her house into the kitchen. If she tried to fight back or when she regained consciousness, he would strangle her until she was unconscious again. She was vaginally and anally raped numerous times. She remembers him saying "What's the matter, baby, don't you like black guys?" and told her to "lock her fucking doors[.]" . . . At one point, he threatened to kill her.

Trial Court Opinion, 2/17/22, at 4 (cleaned up). At around 4:00 a.m. on the morning of the 16th, Ms. Whitmer sought help from her upstairs neighbor. Ms. Whitmer suffered four vaginal tears, one anal tear, two fractures to her jaw, a closed-head injury, kidney contusions, and abdominal wall contusions. As a result of these injuries, she had to undergo facial reconstruction surgery.

Upon investigation, it was determined that the assailant entered her apartment through a window. Latent fingerprints recovered from the window were of insufficient quality for comparison, but investigators processed a shoe print on the front windowsill. Seminal fluid obtained from the hallway near the kitchen and from vaginal swabs taken during the rape kit examination of Ms. Whitmer were sent to a DNA lab for further analysis. However, no suspect was identified at that time.

Two years later, on June 15, 2016, Montikka Gaston was asleep in her first-floor apartment in Harrisburg ("2016 case"). The window behind the head of her bed was open, but the window screen remained in place. Her three-year-old daughter was also in bed with her. In the middle of the night,

Ms. Gaston awoke to someone manipulating her exposed breast. She then saw the offending hand retreat over her head and back out of the window. At that point, she realized the window screen had been moved such that the window was completely open to the outside. She attempted to call the police on her cell phone, which she kept above her pillow, but it was missing. She was nonetheless ultimately able to report the burglary. Responding officers obtained two fingerprints from the window suitable for analysis and comparison.

Thereafter, Appellant was identified as a suspect in both the 2014 case and the 2016 case. Specifically, it was determined that both prints in the 2016 case were a match to Appellant. Then, upon obtaining a buccal swab DNA sample from Appellant, it was determined that the vaginal swabs in the 2014 case contained DNA from both Appellant and Ms. Whitmer, and the seminal fluid found in the hallway was a match to Appellant.

Based upon the foregoing, the Commonwealth charged Appellant at two criminal informations. The 2014 case, *i.e.*, the case *sub judice*, pertained to the June 2014 attack on Ms. Whitmer, in which he was charged as indicated hereinabove. In the 2016 case, the Commonwealth charged Appellant with burglary, indecent assault, and theft by unlawful taking based upon the June 2016 incident involving Ms. Gaston. Subsequently, the Commonwealth provided notice of its intent to join the two cases for trial. In response, Appellant filed a motion to sever. Following a hearing, the court denied

Appellant's motion, concluding that: (1) "evidence of each of the offenses would be admissible in a separate trial for the other" pursuant to Pa.R.E. 404(b);[1] (2) the evidence was amenable to separation by the jury so as to avoid confusion; and (3) Appellant would not be unduly prejudiced. **See** Order, 10/17/19.

Appellant proceeded to a joint jury trial. He was found guilty as charged in the 2014 case, but the jury deadlocked on the charges in the 2016 case. Thereafter, Appellant was sentenced as indicated above. After being granted several extensions to file a post-sentence motion, Appellant instead filed an untimely appeal. This Court discontinued the appeal at Appellant's request, and he thereafter sought reinstatement of his direct appeal rights *nunc pro tunc*, which the trial court granted. The instant appeal followed. Appellant complied with Pa.R.A.P. 1925(b), and the trial court relied on the Rule 1925(a) opinion submitted in the discontinued appeal. Appellant raises a single question for our consideration: "Did the trial court err in denying [Appellant]'s motion to sever?" Appellant's brief at 6.

---

[1] Specifically, the court reasoned that it would be admissible to prove absence of mistake. **See** Order, 10/17/19. The court later clarified that it believed the evidence was also admissible to prove identity and a common plan, scheme, or design. **See** Trial Court Opinion, 2/17/22, at 15. Regardless of the reason stated by the trial court, this Court may affirm on any basis. **See Commonwealth v. Rowe**, 293 A.3d 733, 739 (Pa.Super. 2023) ("We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.").

We begin with an overview of the relevant legal principles. Joinder and severance are governed by the Rules of Criminal Procedure. Rule 582 provides that "[o]ffenses charged in separate indictments or informations may be tried together if. . . the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]" Pa.R.Crim.P. 582(a)(1). We have held that "where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." *Commonwealth v. Dozzo*, 991 A.2d 898, 903 (Pa.Super. 2010) (cleaned up). We have further expounded upon Rule 582 as it relates to the admissibility of evidence of other crimes pursuant to Pa.R.E. 404(b), as follows:

> Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime. Nevertheless:
>
>> Evidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

*Id*. at 902 (cleaned up). Additionally, we have observed the following:

> Identity as to the charged crime may be proven with evidence of another crime where the separate crimes share a method so

distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant. Required, therefore, is such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others.

In comparing the methods and circumstances of separate crimes, a court must necessarily look for similarities in a number of factors, including: (1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims. Remoteness in time between the crimes is also factored, although its probative value has been held inversely proportional to the degree of similarity between crimes.

*Commonwealth v. Weakley*, 972 A.2d 1182, 1189 (Pa.Super. 2009) (cleaned up). Evidence of other crimes is admissible for one of the enumerated, permitted purposes "so long as proof of one crime tends to prove the others. Furthermore, whether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court." *Commonwealth v. Cousar*, 928 A.2d 1025, 1037 (Pa. 2007) (cleaned up).

As for severance, "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." *Commonwealth v. Hobel*, 275 A.3d 1049, 1067 (Pa.Super. 2022) (cleaned up). Rather,

> [t]he prejudice of which Rule 583 speaks is . . . that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.  Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

***Commonwealth v. Brown***, 186 A.3d 985, 993 (Pa.Super. 2018) (cleaned up).

Evaluating Rules 582 and 583 together, our courts have devised a three-part test:  "(1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses." ***Hobel***, ***supra*** at 1067 (cleaned up).  Indeed, "[t]he general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence." ***Commonwealth v. Johnson***, 236 A.3d 1141, 1150 (Pa.Super. 2020) (*en banc*) (cleaned up).  Thus, this Court will not reverse an order deciding whether to join or sever offenses "absent a manifest abuse of discretion." ***Id***. (cleaned up).  Rather, "[t]he critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever.  The appellant bears the burden of

establishing such prejudice." ***Commonwealth v. Mollett***, 5 A.3d 291, 305 (Pa.Super. 2010) (cleaned up).

In its Rule 1925(a) opinion, the trial court stated that it denied Appellant's motion to sever because it determined that evidence from each case would be admissible to prove Appellant's common scheme, plan, or design, as well as to prove absence of mistake and identity of the perpetrator. ***See*** Trial Court Opinion, 2/17/22, at 15. The court explained its findings as follows:

> In both cases, the victim[s] resided in a first-floor apartment and were asleep when the assaults began. In both instances, the perpetrator utilized a window on the first floor to gain access to the victim. Both crimes occurred in the early morning hours and neither victim knew their assailant. However, both described the perpetrator as a dark-skinned male.
>
> The 2014 crime [and 2016 crime] occurred . . . approximately 1.2 miles away. The victims were of similar ages - Ms. Whitmer was twenty-nine in 2014 and Ms. Gatson was twenty-seven in 2016. The incidents occurred nearly on the same date two years apart - June 14-15, 2014 and June 15-16, 2016.
>
> Additionally, the evidence from each case would be admissible at trial for the other because it would prove absence of mistake and the identity of the perpetrator. Until 2018, both crimes remained unsolved. In June of 2017, Detective Kimmick received a hit on the latent fingerprints lifted from the 2016 case on AFIS. After further examination and analysis, it was determined that the latent prints lifted from the 2016 case were a match to Appellant. In November of 2018, Detective Paul received notice of a DNA hit on the swabs submitted from the Ms. Whitmer's sexual assault kit. Thereafter, Detective Paul obtained a search warrant for a buccal swab from Appellant for lab comparison. It was subsequently determined that Appellant was a match for the DNA from Ms. Whitmer's sexual assault kit, as well as the seminal fluid left on her floor. The similar pattern of sexual assault (although the second event was interrupted and not completed) and the high

> correlation of details between the crimes indicates a single perpetrator - Appellant.
>
> Lastly, is it clear from the jury's verdict that the evidence of each crime was capable of separation. The jury convicted Appellant of the 2014 case, but w[as] deadlocked on the 2016 case.

Trial Court Opinion, 2/17/22, at 15-16.

Appellant maintains that the 2014 case and 2016 case were not similar, that the trial court did not address whether the victims were of the same race so as to demonstrate a signature, and the court could only speculate that the attack in the 2016 case was interrupted before reaching the level of brutality exhibited in the 2014 case. *See* Appellant's brief at 27-28. Moreover, he argues that the court erred in failing to assess the prejudice resulting from joinder in its order denying his motion to sever or in its Rule 1925(a) opinion. *Id*. at 29. Despite the deadlock on the 2016 case, Appellant asserts prejudice because the jury could have used the evidence from one case to determine that Appellant had the propensity to and did commit the crimes in both cases. *Id*. at 30.

As noted, prejudice in this context "must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." *Hobel*, *supra* at 1067 (cleaned up). Instead, prejudice will be found: (1) "if the evidence tended to convict the appellant only by showing his propensity to commit crimes," or (2) because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." *Brown*, *supra* at 993 (cleaned up). We find unavailing Appellant's conclusory

- 9 -

statements that the evidence showed only his propensity to commit crimes. Moreover, as discussed *infra*, we disagree with his assessment that the cases "shared no logical connection[.]" **See** Appellant's brief at 30. The court expressly addressed the second type of Rule 583 prejudice by determining that the jury was capable of separating the evidence of the 2014 case and the 2016 case. We discern no abuse of discretion on the trial court's part in reaching that conclusion and agree with its analysis. Thus, our review leads us to conclude that Appellant has not carried the burden of establishing prejudice as a result of the court's decision not to sever the 2014 case from the 2016 case.

Furthermore, the certified record bears out that "[s]ufficient commonality of factors between the two crimes here dispels the notion that they are merely coincidental and permits the contrary conclusion that they are so logically connected they share a perpetrator." **Weakley**, **supra** at 1189. Like the fictional Michael Myers who only attacks on Halloween night, Appellant chose nearly identical dates, two years apart, to illegally gain entry through the window into the first-floor apartment of a woman in her late twenties to sexually assault her as she slept. The two apartments were located approximately one mile apart. In the 2014 case, the victim was alone in her bed and Appellant gained entry and began to brutally attack her before she awoke. He strangled her unconscious multiple times and covered his face to prevent her from reporting the attack. In the 2016 case, the victim was in

bed with her daughter and she awoke before Appellant gained full entry into her room. Nonetheless, he attempted to prevent her from reporting the sexual assault by taking her phone.

Based on the foregoing, we determine no abuse of discretion in the trial court's conclusion that (1) "the evidence of each of the offenses would be admissible in a separate trial for the other;" (2) the evidence in each case was "capable of separation by the jury so as to avoid danger of confusion; and," (3) Appellant would not "be unduly prejudiced by the consolidation of offenses." **Hobel**, **supra** at 1067 (cleaned up). Thus, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to sever. Having no cause to disturb Appellant's judgment of sentence, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/25/2023